## EMPLOYEE CRIPPLED BY ELECTRIC SHOCK.

Circuit Court of Lorain County.

THE CLEVELAND & SOUTHWESTERN TRACTION COMPANY v. LISLE
E. GARNETT.*

Decided, April 29, 1908.

*Negligence—Charge of Court—Request for Special Verdict in Writing—
Submission of Interrogatories to Jury.*

1. When what is intended to be a request that the court "direct the
   jury to give a special verdict in writing upon certain issues"
   amounts to nothing more than "a request to instruct the jury to
   find specifically upon particular questions of fact," and is not
   couched in such terms as to require being given as the latter, there
   is no error in refusing to give it at all.
2. When the court in his charge to the jury in an employer's liability
   case defines negligence as the want of ordinary care, it is not im-
   proper to submit to the jury interrogatories to be answered by it
   which require it to state whether or not the plaintiff, as well as
   the defendant, were negligent.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

This proceeding in error is prosecuted by the Cleveland &
Southwestern Traction Company to reverse a judgment re-
covered against it by Lisle E. Garnett, for injuries sustained by
him while in its employ and in consequence of an electric shock
and burns by which he was crippled about the hands. Garnett
was employed in the traction company's Rockport shop and yard
as a pitman, and had been in the service the better part of a
year. His duties required him to work underneath cars, which
needed repairing, in a pit provided for that purpose. He was
accustomed also to perform other tasks about the yard, so that
his knowledge of the use of electric currents and the presence
of overhead electric wires about the yards may be presumed.

At the time Garnett was injured, he, with other employees
of the company, were engaged in shifting cars in the yards, and

---

*Affirmed without opinion, *Cleveland & Southwestern Traction Co.* v.
   *Garnett,* 81 Ohio State, 483.

in pursuance of general directions in their behalf he was helping to place certain of these cars on a spur-track and was riding at the forward end of a flat-car. At the end of this spur-track was a railroad box car which had been fitted up with a transformer in order to change an alternating current of electricity into a direct, or *vice versa*. This car was known as a sub-station, and into the end of it, towards which Garnett and the cars upon which he was riding were approaching, some wires each of the diameter of a lead pencil were let in from a pole nearby in order to connect with said transformer. These wires entered the box car through the end and directly underneath its roof. They were insulated at the point of entrance and for a foot or so outside the car, but beyond that they were bare. After leaving the car they extended horizontally for a short distance, before the curve of the sag carried them up to the top of the pole to which they were attached.

Garnett stood on the car with one hand on the brake, and with the other hand he gave a signal to stop, in order that the cars might not collide with this box car sub-station. While in this attitude, his upraised hand came in contact with one of the wires, and, a circuit having been established through his body and the brake, he sustained the injuries already mentioned.

The men who were shifting these cars had not been specifically directed to put any of the cars on this particular spur-track, neither had Garnett been specifically directed to ride on any car. He and the others chose their own way and manner of performing the work. He had not been specially warned about the particular hazard which resulted in his injuries, and he testifies that he did not know that the box car was a sub-station or that there were any wires entering it, or that any current of electricity was conducted to it. He knew, however, what a sub-station was, from his experience in the shop where another transformer was in use. The wires, moreover, which entered this sub-station were plainly before his eyes, had he been looking in that direction, and had he known of their presence he would probably have had reason to believe from his general experience, that they were charged with a dangerous electric current.

The surgeon who treated his injuries conversed with him about the accident soon after it occurred, and both he and a by-stander at the hospital declare that Garnett then admitted that he had known that the wires were there and their character, and that when he raised his hand to signal he forgot about them. Garnett positively denies that he made any such statement and the jury evidently believed him. We are not prepared to say on all the evidence, that he either had or was chargeable with such knowledge. It is entirely conceivable that his notice had never been attracted to the wires entering the box car and to the danger of performing these common duties of a brakeman in the usual manner in which he did perform them on this occasion. Under all the testimony we might perhaps differ from the conclusion to which the jury came in this behalf, but we are not able to say that their verdict is clearly wrong, either with respect to the alleged contributory negligence and assumption of risk by the plaintiff below or on that of the negligence charged against the defendant below. We can not, therefore, disturb the judgment upon the ground that the evidence is insufficient to uphold the finding for the plaintiff in these respects.

Other errors assigned relate to the somewhat unusual matter of practice invoked by the defendant below in requesting the court to require the jury to find a special verdict under Sections 5200 and 5201, Revised Statutes, which provide that "the verdict of a jury must be either general or special" and "in all actions the jury, unless otherwise directed by the court, may, in its discretion, render either a general or special verdict; but the court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues."

A special verdict is understood to be one by which the jury returns findings upon the several issues of fact separately, leaving the court thereafter to render such judgment as the facts so found may require. When such a verdict is required the party requesting the same usually presents such form of finding as he thinks the evidence warrants, and the court submits the same to the jury with such emendations as upon the suggestion of opposite counsel or otherwise, may seem to be required. The jury may vary the outline of the special verdict thus submitted

to them in such manner as they may think the evidence makes necessary.   Sometimes competing forms of verdicts are submitted representing the contentions of the opposite sides, respectively, as to what the evidence should be deemed to prove.   If such forms are drawn up in a narrative style it is manifest that however useful they may be where the issue is single, they are quite unfitted to express the actual agreement of minds at which the jury will arrive respecting a great variety and complexity of issues and cross-issues, such as an employer's liability damage case usually presents.   General speaking a jury is but poorly qualified to draw up a form of special verdict of its own or to materially vary a form prepared in advance for its use.   In this case the narrative form of special verdict was not presented by the defendant when its request was made.   Instead, a series of questions deemed by it to cover the issues in the case was offered, together with certain special requests to charge before argument, which were also proffered in writing.   These requests to charge referred by number to various questions in the so-called special verdict submitted by the defendant, in such manner that if the form of verdict was disallowed, the requests to charge would have to be disallowed also.   Both were in fact rejected by the court, and properly so, we think, under the authority of *Gale* v. *Priddy,* 66 O. S., 400, the *per curiam* in which at pages 403 and 404, is in part as follows:

"It does not appear that the court requested to instruct the jury 'to find specially upon particular questions of fact,' although questions seem to have been prepared and submitted to the court for the purpose of procuring such a special finding. Instead of such a request, the record shows that the defendant requested the court 'to direct the jury to give a special verdict in writing upon certain issues,' which is a very different thing. It does not appear that a special verdict on any 'issues' was prepared and submitted as is the general and proper practice in such cases (22 Ency. Pl. & Pr., 993) ; but it does appear that certain 'particular questions of fact' were prepared, which counsel doubtless desired to have answered by the jury.   A 'particular question of fact' (Section 5201, Revised Statutes) is something different from, and less than an 'issue' and the object of the statute is that these special findings, if inconsistent with the general verdict, may control it."

It thus appears that what was intended to be a request that the court "direct the jury to give a special verdict in writing upon certain issues," amounted in this case to nothing more than "a request to instruct the jury to find specifically upon particular questions of fact," and it was not couched in such terms as that in either aspect the court was bound to grant it. The first two paragraphs of the syllabus in the same case are as follows:

"1.   A request that the court will direct the jury to render a special verdict in writing, upon any or all of the issues in the case, is not a request to instruct the jury that if they find a general verdict, they shall find specially upon particular questions of fact, as provided in Revised Statutes, Section 5201.

"2.   Section 5201, Revised Statutes, so far as it relates to special findings upon particular questions of fact, is mandatory only when the request therefor contains the condition that the questions which are submitted shall be answered in case a general verdict shall be rendered."

Notwithstanding the futility of defendant's request for a special verdict, the court did in fact instruct the jury to make their verdict special instead of general, thus heeding the request, so far forth, but substituting in place of the entire list of questions tendered by defendant below, a list prepared by the court, supplemented by certain of defendant's questions, the same being submitted to the jury with their authorship thus distinguished.  The alleged error in thus disclosing the origin of the questions in connection with the court's draft of special verdict is, in our opinion, without foundation.  Some of the defendant's questions so submitted, were answered by the jury in a manner as favorable to the defendant as it could ask, and in any event we can see no prejudice to it in this procedure.  If the court could not of its own motion require the jury to return a special verdict under the statutory provision in that behalf, the color of the defendant's request therefor, informal and invalid though that request was, would suffice to sustain the court's action in this respect, and the same is true with respect to the court's drafting in the form of interrogatories instead of in narrative form, this special verdict which it instructed the jury

to return.  The impracticability of formulating a special verdict in narrative form in this case, in view of the complexity of the issues; the practice which the defendant had already sought to establish by drafting its request for a special verdict in the same manner; and its failure to withdraw its request for a special verdict; in the turn which the case finally took before submission to the jury, render it impossible for us to hold that the court committed an error in the matters of practice which we have just discussed.

It is said, however, that the questions submitted to the jury with the answers thereto, can not collectively be considered as a special verdict on the facts alone, so as to dispense with the general verdict, for two reasons.

1.  Because it does not exhaust all the issues in the case.

2.  Because it includes findings other than those of mere fact.

On the first point it is true that many of the probative facts sought to be elicited from the jury in the form of the so-called special verdict, submitted by the defendant below, were of such a nature, within the rule of *Gale* v. *Priddy, supra,* as that ultimate material facts might have been inferred therefrom, and if the interrogatories of this character had been submitted with a proper request to the court to instruct the jury to find specially upon the particular question of fact to which they related, it would undoubtedly have been the duty of the court to submit them to the jury accordingly.  Considered, however, as component parts of a special verdict, they were not essential questions, if all the issues of fact in the case were otherwise fully covered in the form of verdict actually submitted; and this after careful examination we find to be the case.  It would perhaps be unprofitable to enter into a minute examination here of all of the issues of fact presented by the pleadings and in the special verdict found by the jury.  Suffice it to say that point by point we have set the pleadings over against the verdict and find that the latter completely covers all issues made by the foreman.

On the second point (if the jury in returning a special verdict is confined by the statute to the facts), the question of negligence is, as frequently said by our Supreme Court, a mixed

question of law and fact; and the form of special verdict submitted by the court to the jury in this case required them to answer specifically whether the defendant was negligent, and also whether the plaintiff was negligent. In the charge negligence was defined as want of ordinary care, and ordinary care was defined in the familiar terms laid down by our Supreme Court. If the jury had been asked to say whether plaintiff and defendant respectively exercised such care, in respect to the matters charged to be negligent in the pleadings, as persons of ordinary prudence are accustomed to employ under similar circumstances, such questions, together with the jury's answers thereto, would, we think, have been within the realm of fact as distinguished from conclusions of law. With the term negligence defined as the court did define it to the jury, the circumlocution was avoided and the same result follows as if the more involved phraseology had been employed in the verdict itself.

We hold, therefore, that the errors assigned in regard to the special verdict were all unfounded.

It would extend this opinion to undue length to consider at large all the numerous exceptions reserved in respect to the production of evidence, the charge and requests to charge, etc. Suffice it to say that we have carefully examined every point urged in the arguments and briefs of counsel, without finding any reversible error in the record, and the judgment is therefore affirmed.